**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**CARL F. BORGMAN,**

**Plaintiff,** **CIVIL ACTION NO. 11-12938**

**vs.**

**DISTRICT JUDGE MARK A. GOLDSMITH**

**COMMISSIONER OF SOCIAL SECURITY,** **MAGISTRATE JUDGE MONA K. MAJZOUB**

**Defendant.**
**_________________________/**

**REPORT AND RECOMMENDATION**

**I. RECOMMENDATION:** This Court recommends that Plaintiff's Motion For Summary Judgment (docket no. 10) be granted, Defendant's Motion for Summary Judgment (docket no. 13) be denied, and the instant case be remanded for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**II. PROCEDURAL HISTORY:**

Plaintiff filed an application for a period of disability and disability insurance benefits on May 19, 2008, alleging disability beginning March 3, 2008. (TR 10). The Social Security Administration denied benefits and Plaintiff filed a timely request for a *de novo* hearing. On May 13, 2010 Plaintiff appeared with counsel in Oak Park, Michigan and testified at a video hearing held by Administrative Law Judge (ALJ) Joseph P. Donovan, Sr, who presided over the hearing from Chicago, Illinois. (TR 40-90). Vocational Expert (VE) William Newman also appeared and testified at the hearing. In a June 29, 2010 decision the ALJ found that Plaintiff was not entitled to disability benefits because the evidence showed that there were a significant number of jobs existing

in the national economy that Plaintiff could perform. (TR 10-29). The Appeals Council declined to review the ALJ's decision and Plaintiff filed a timely complaint for judicial review. The parties filed cross Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

## III. PLAINTIFF'S TESTIMONY AND RECORD EVIDENCE

### A. Plaintiff's Testimony

Plaintiff was forty-one years old at the time of his alleged onset of disability. (TR 46). He has a college degree in construction management. (TR 79). Plaintiff owns a home, lives on his own, and receives help from his parents with bills, laundry, and transportation to medical appointments. (TR 71, 77). Plaintiff was employed as a construction manager/inspector at Selfridge National Guard Base. (TR 45, 59-60).

Plaintiff testified that he had surgery in 2006 to remove a spinal tumor and claims that during the surgery nerves were severed causing damage to his left leg. (TR 51, 54, 66). Plaintiff testified that he has nerve pain and hypersensitivity in his left ankle, swollen ankles with persistent itching and burning of both feet, restless leg syndrome, knees that swell and buckle, and pain in his lower back. (TR 54, 66). He testified that he has intermittent gait and balance problems and he uses a cane for balance. (TR 51, 58). He states that he has bowel problems that cause him to visit the bathroom six to eight times a morning, which have made him persistently tardy for work or caused him to miss work altogether. (TR 62-63). Plaintiff testified that he has intermittent problems with his vision, and a history of reflux and breathing problems. (TR 69).

Plaintiff states that he can sit and stand for fifteen to thirty minutes at a time without pain, heel-toe walk approximately one block without using a cane, crouch, bend at the hip, bend at the

knees if done slowly, and reach overhead, to the side and out in front. In contrast, however, Plaintiff also testified that he may become off-balance and require a cane for assistance when he reaches with both arms or if walking the short distance to and from his home mailbox. (TR 52-54). Plaintiff testified that he can comfortably lift a gallon of milk with his right and left hand without pain, and states that he has numbness and tingling in his left arm. (TR 53). He testified that he is able to push and pull a wheeled cart over a smooth floor with two gallons of milk in it. (TR 53). He states that he can make a fist, press his thumb to the fingers of each hand, and pick up small items with some difficulty. He can climb approximately fifteen steps before needing a short rest. (TR 56). He testified that he has to elevate his legs and ice his kneecap to alleviate pain and swelling. (TR 76).

Plaintiff testified that he has difficulty focusing and concentrating which prevents him from working a simple, sit-down job, yet he claimed to have no difficulty remaining focused and maintaining his concentration during the one hour and ten minute administrative hearing. (TR 57, 65). Plaintiff testified that he has crying spells if he thinks about the manner in which his life has changed and how he has been forced to give up his many hobbies since becoming ill. (TR 67). Plaintiff claims that he has to lay down five to seven times a day for up to two hours at a time depending on his level of pain. He claims that if he were working he would have to take unscheduled breaks every thirty minutes lasting anywhere from fifteen minutes up to two hours. (TR 75-76).

**B. Medical Evidence**

The medical record reveals that Plaintiff has a history of hemochromatosis; mild mitral, tricuspid and pulmonary insufficiency with moderate left ventricular hypertrophy; hypertension; myocardial infarction without ischemia; gastroesophageal reflux disease; asthma; lower back pain;

peripheral neuropathy; mild obstructive sleep apnea; status-post laminectomy and removal of intradural spinal canal cord tumor with resulting nerve damage; mild edema of the left knee without a reduction in the range of motion; depression; possible component of irritable bowel syndrome; diabetes; and transient obscurations of vision. (TR 259, 272, 274, 286-88, 303, 329, 473, 508, 527, 545, 735, 759).

On February 14, 2008 Plaintiff was evaluated by Dr. A. Robert Spitzer of Basic Research and Investigative Neurosciences, P.C., who opined that Plaintiff presented a very complex case with numerous interrelated issues. Dr. Spitzer observed that Plaintiff was awake, alert, and conversant with normal language, normal coordination, an unremarkable gait, but with S1 territory weakness on the left side. Dr. Spitzer concluded that Plaintiff exhibited evidence of peripheral, focal mononeuropathies probably referable to the resected schwannoma. (TR 535-37).

On March 7, 2008 Plaintiff reported to Delta Family Clinic for a level III neuropsychological assessment with Dr. Gerard R. Williams after Plaintiff experienced symptoms attributed to a suspected toxic exposure at work. (TR 252). Plaintiff complained of memory problems, concentration deficits, fatigue, muscle and skeletal aches, twitches, ticks, nerve issues, spinal problems, tumors, sleep disturbances, crying episodes, and a minor heart attack in 2005. (TR 252-53). He reported that he was taking the following medications: Lisinopril, Metoprol, Heart Cycloben Zaprine, Muscle Relaxers, Lyrica, Vitamin D, Naproxen, Omacor, Hydrocodone, Xopenex, Vicodin, and Singulair. (TR 253). Dr. Williams opined that Plaintiff was alert to his environment and oriented times three. He opined that Plaintiff did not demonstrate any confusion with regard to the testing process or show any signs of fatigue, anxiety, emotionality, pain, or the effects of medication. Dr. Williams noted that Plaintiff's ambulatory coordination was normal, and

he showed no signs of gross or fine motor tremors. Plaintiff's grooming and hygiene appeared excellent. (TR 253). Dr. Williams observed that Plaintiff was friendly and cooperative and seemed to put forth a maximal level of effort. (TR 253).

Dr. Williams administered the Weschsler Adult Intelligence Scale-Third Edition for the purpose of evaluating Plaintiff's intellectual skills and abilities, and observed that Plaintiff scored in the average range in verbal IQ, performance IQ, full scale IQ, verbal comprehension index, and perceptual organization. (TR 254). Dr. Williams opined that Plaintiff did not appear to be experiencing significant difficulties in his perceptual skills and his IQ scores were "consistent with his stated pre-illness history." (TR 254-55). He observed that Plaintiff's visual fields appeared intact with no losses of visual field perception, his single and double tactile stimulation did not indicate tactile suppressions, and no abnormalities were noted with regard to Plaintiff's gross auditory perception. (TR 255). Plaintiff's motor skills were unremarkable with above average gross motor strength in the right and left hand, he had no significant deficits in social judgment and decision making, no significant deficits in executive skills, and no evidence of impairments with regard to sustained attention and concentration. (TR 255-56). Dr. Willams observed that Plaintiff's test results did not evidence significant memory deficits. (TR 256). He opined that Plaintiff showed areas of cognitive deficits, including spelling, the ability to learn simple lists, and immediate and delayed visual recognition. (TR 257). He further concluded that Plaintiff's areas of cognitive strength included arithmetic, verbal IQ, performance IQ, full-scale IQ, perceptual organization, working memory, and immediate and short-term memory. Dr. Williams diagnosed Plaintiff with posttraumatic stress disorder and mood disorder due to general medical condition with depressed mood. (TR 259).

An esophagogastroduodenoscopy and endoscopic ultrasound performed in June 2007 was normal. (TR 264). A colonoscopy performed April 3, 2008 was unremarkable and CT scans of the thorax demonstrated no interstitial lung disease or bronchiolectasis, no acute infiltrate, but chronic atelectasis. (TR 260-61, 509, 515). On May 6, 2008 Dr. Shlomo Mandel of Medicolegal Services, Inc. examined Plaintiff for the purpose of an independent evaluation. (TR 368-81). At the time Plaintiff's chief complaint was shortness of breath. Dr. Mandel concluded that a February 1, 2008 pulmonary function study showed interstitial and restrictive changes rather than obstruction of airflow, and did not support Plaintiff's asthma diagnosis. (TR 372, 377). Dr. Mandel further opined that Plaintiff's examination did not reveal the clinical findings of wheezing or retraction that would be evident with asthma. (TR 377). Dr. Mandel concluded that no clear diagnosis has been established, there was no objective sign of asthma, and no clear indication of respiratory disorder. (TR 378). He further opined that from a respiratory perspective there were no signs of functional limitations that would preclude Plaintiff from performing his normal work activities and prevent Plaintiff from returning to any reasonable employment. (TR 379-80). Dr. Mandel concluded that based on the information reviewed Plaintiff does not require further treatment for his respiratory problems.

On March 14, 2008 Dr. Ernest P. Chiodo conducted an occupational and environmental medicine and industrial hygiene evaluation upon Plaintiff. (TR 393-95). Dr. Chiodo observed that Plaintiff had marked weakness in the left leg, he walked with a limp, and relied upon a cane for assistance. (TR 394). Dr. Chiodo concluded that pulmonary function studies revealed mixed obstructive and restrictive pulmonary disease. (TR 395). He opined that Plaintiff is suffering from pulmonary disease in the form of occupational asthma due to exposure to solvents during the course

of his employment at Selfridge Air National Guard Base. He further concluded that Plaintiff is disabled from further employment due to his work related pulmonary and neurological disease and this disability is likely to be permanent. (TR 395).

On July 1, 2008 Dr. Michael Harbut evaluated Plaintiff and concluded that he has a history of exposure to multiple toxic agents, hypertension, left ventricular hypertrophy, non-ST elevation myocardial infarction, hemochromatosis, renal failure, interstitial lung disease, obstructive lung disease, asthma, neuropathy, probable encephalopathy, balance issues, depression, and posttraumatic stress disorder. (TR 329). Dr. Harbut concluded that pulmonary function studies revealed that Plaintiff's total lung capacity was at the lower end of normal at 82%, with evidence of constriction, obstruction, and reversibility, revealing possible interstitial lung disease. Dr. Harbut concluded that Plaintiff was totally and permanently disabled and should not return to work. (TR 329).

On July 7, 2008 Dr. Ernest Chiodo conducted a follow-up occupational and environmental medicine and industrial hygiene evaluation upon Plaintiff after reviewing Dr. Mandel's independent medical evaluation, and again concluded that Plaintiff has obstructive and restrictive pulmonary disease. Dr. Chiodo reasserted his opinion that Plaintiff remains disabled due to his work-related exposures to toxic substances and that this disability is likely to be permanent. (TR 366-67).

Dr. Ashok Kaul performed a Psychiatric Review Technique upon Plaintiff on August 19, 2008 and concluded that Plaintiff's psychological condition was not severe. (TR 405). Dr. Kaul determined that Plaintiff did not meet the medical criteria for listing 12.04 based on "mood d/o" due to general medical condition, nor did he meet listing 12.06 based on posttraumatic stress disorder. (TR 409, 411). He opined that Plaintiff showed only mild restrictions in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace, and no episodes

of decompensation. (TR 416). This assessment was based in part on evidence that Plaintiff lives alone, fixes simple meals, drives, shops in stores, pays bills, handles his own funds, but does not do chores and relies on his mother for certain household help. (TR 404). Dr. Kaul further concluded that the evidence did not establish the "C" criteria of listing 12.04 or 12.06.

Dr. B.D. Choi conducted a Physical Residual Functional Capacity Assessment on August 25, 2008 and opined that Plaintiff can lift or carry ten pounds occasionally and frequently, stand and/or walk at least two hours in an eight-hour workday, sit for six hours in an eight-hour workday, with no push/pull limitations. (TR 420-27). He opined that Plaintiff can occasionally stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, or scaffolds, and frequently balance. (TR 422). He determined that Plaintiff has no manipulative, visual, or communicative limitations, but must avoid even moderate exposure to vibration, fumes and hazards, including machinery and heights. (TR 423-24). Dr. Choi concluded that Plaintiff's assessment of his limiting factors was partially credible. (TR 425).

On September 5, 2008 Physician's Assistant Terri Jones and Dr. Robert E. Ho from the Neurosurgery Group drafted a letter on behalf of Plaintiff stating that they believed Plaintiff should be disabled from his position as a "building superintendent" where he was required to climb ladders and work on elevated platforms. (TR 790-91). The letter states that the Neurosurgery Group did not have Plaintiff on a formal disability, but that he is restricted from repetitive bending, lifting, twisting, pushing and pulling, and he is unable to sit, stand, or walk for prolonged periods of time, typically no more than thirty minutes. (TR 790).

On July 7, 2009 Dr. Diane Culik from McLaren Family and Integrative Medicine drafted a letter on behalf of Plaintiff stating that Plaintiff can barely function to take care of himself and

requires assistance from his family after chemicals "melted" his brain and function. (TR 811). She noted that Plaintiff leaves pots on the stove, the gas range on, and doors unlocked. Dr. Culik concluded that Plaintiff is physically and mentally no longer able to function and is medically unable to work. (TR 811).

On July 10, 2009 Dr. Leon Rubenfaer completed a Mental Residual Functional Capacity Questionnaire. (TR 812-16). Dr. Rubenfaer checked boxes indicating among other things that Plaintiff meets the "A" criteria of listing 12.04 because he exhibited a depressive syndrome characterized by a pervasive loss of interest in almost all activities, decreased energy, difficulty thinking or concentrating, and sleep disturbances. (TR 813). He also checked boxes indicating that Plaintiff had no useful ability to function with regard to his mental abilities and aptitudes needed to do unskilled, semiskilled, skilled work or particular types of jobs. (TR 814-15). Dr. Rubenfaer circled the statement indicating that Plaintiff's impairments would cause him to be absent from work more than four days per month and he concluded that Plaintiff's prognosis was poor. (TR 812, 816).

In September 2009 Plaintiff returned for a second Neuropsychological Evaluation with Dr. Gerard Williams. (TR 828-35). Dr. Williams observed that Plaintiff was aware of his environment and oriented times three. He opined that Plaintiff's ambulatory coordination was normal, and he showed no signs of gross or fine motor tremors. Grooming and hygiene appeared excellent, and Plaintiff's thought processes appeared normal. (TR 829-30). Dr. Williams observed that Plaintiff was friendly and cooperative and seemed to put forth a maximal level of effort. (TR 829). Results from a Weschsler Adult Intelligence Scale-Third Edition evaluation indicated that Plaintiff's scores generally improved from his March 2008 Weschsler IQ test, and now yielded a high average range for verbal, performance, and full scale IQ, an average range for verbal comprehension and working

memory index, and a superior range for perceptual organizational index. (TR 830).

Dr. Williams observed that Plaintiff's visual fields appeared intact with no losses of visual field perception, his single and double tactile stimulation did not indicate tactile suppressions, and no abnormalities were noted with regard to his gross auditory perception. (TR 831). Plaintiff's motor skills revealed above average gross motor strength in the right hand and average gross motor strength in the left, with a reduction in strength in the left hand from the March 2008 evaluation. (TR 832). Plaintiff's language skills were unremarkable with above average vocabulary skills and below average reading skills. Dr. Williams observed that Plaintiff's test results did not evidence significant deficits in constructional skills, social judgment, decision making, sustained attention, or concentration. (TR 832). He further determined that Plaintiff exhibited significant memory deficits, particularly with regard to visually and verbally mediated types of information. (TR 833-34).

Dr. Williams concluded that Plaintiff's test results indicated continued losses in cognitive efficiency, and significant memory deficits and personality changes related to Plaintiff's suspected toxic substance exposure. (TR 833-34). He opined that Plaintiff's reported toxic exposure has caused cognitive and affective difficulties. (TR 834). Dr. Williams assigned Plaintiff a GAF of 43, indicating serious symptoms or serious impairment in social, occupational, or school functioning, such as an inability to keep a job. (TR 834).

On January 20, 2010 Plaintiff was evaluated by Physician's Assistant Sara Wierzbicki and Dr. Asad Mazhari of the Department of Neurosurgery at Wayne State University School of Medicine. (TR 901-02). The report states that ideally Plaintiff would be disabled from his current job as an inspector, but he is not permanently disabled from a neurological standpoint. (TR 901).

## IV. VOCATIONAL EXPERT TESTIMONY

The VE testified that Plaintiff's past relevant work as a construction manager/inspector is skilled labor with light physical demands, although Plaintiff performed the job at a medium to heavy range. (TR 79). The VE further testified that Plaintiff acquired skills in his construction manager/inspector position that could transfer to light or sedentary exertional work, including the ability to perform inspections and perform clerical office work like purchasing and scheduling. (TR 80).

The ALJ asked the VE to testify whether jobs were available for an individual with Plaintiff's age, education, and past relevant work experience who requires semiskilled or unskilled simple, repetitive work; who is able to walk over a smooth surface for extended periods of time, but who needs to use a cane if walking farther than one block; is able to lift and carry twenty pounds occasionally and ten pounds frequently with no push/pull limitation; sit/stand/walk six hours in an eight-hour workday, with a sit/stand option due to perceptions of pain and discomfort; who frequently needs to use hand/arm and foot/leg controls; needs to elevate his feet to footstool level to relieve discomfort; who can frequently finger, handle, reach overhead, climb ramps, and climb fifteen steps before requiring a rest; balance occasionally using a cane; and who can stoop, kneel, crouch, and crawl occasionally. (TR 80-81). The ALJ added that the individual would require limited exposure to vibration, unprotected heights, hazardous moving machinery, and concentrated fumes or chemicals, like newspaper print, and the individual works better with things than with people in terms of instructions only. (TR 81-82). The ALJ further added that the time off-task secondary to discomforts of pain would be one to two percent of the workday at the workstation for purposes of a sit/stand option, for which there would be no reduction in productivity.

The VE testified that the hypothetical individual would be limited to sedentary work and would not be capable of performing Plaintiff's past relevant work. (TR 82-83). The VE further testified that the individual could perform unskilled, sedentary jobs like bench hand assembler, sorter, and general assembler, comprising 70,300 jobs in the State of Michigan. (TR 83). The VE estimated that the total number of available jobs should be reduced by approximately thirty percent to account for Michigan's economy. (TR 86). The VE further testified that if the individual would miss four or more days of work each month, would have to take unscheduled breaks every thirty minutes lasting approximately fifteen to twenty minutes, or would have to walk around every fifteen minutes for approximately five minutes, he would be precluded from performing any work. (TR 88-89). Additionally, the VE testified that if the individual was required to elevate his legs to at least ninety degrees or would be tardy approximately ten times per month, he would be work precluded. (TR 89).

## V. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff has not engaged in substantial gainful activity since his alleged onset date of March 3, 2008, and suffers from the severe impairments of degenerative disc disease, lumbar radiculopathy status post L3 schwannoma removal and laminectomy, chronic obstructive pulmonary disorder (COPD), asthma, interstitial lung disease, siderosis, hemochromatosis, neuropathy, diabetes mellitus, organic mood disorder secondary to toxic exposure, depressive disorder, posttraumatic stress disorder (PTSD), periodic leg movement disorder, a history of toxic exposure, paroxysmal hypertension, obstructive sleep apnea, and obesity, he did not have an impairment or combination of impairments that meets or equals the Listing of Impairments. (TR 12-15).

The ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform light work with a sit/stand option involving the use of a cane for walking more than one block; an option to elevate his feet to stool height of six to eight inches; occasional use of foot/leg controls; occasional balancing with a cane, stooping, kneeling, crouching, and crawling; frequently using hand/arm controls, feeling, fingering, handling objects, reaching, reaching overhead, climbing ramps and stairs with rest after climbing fifteen steps; avoidance of concentrated exposure to chemicals, fumes, unprotected heights, moving machinery (not including the personal automobile), and vibration; and the use of eyeglasses. Plaintiff can perform simple, repetitive work tasks of semiskilled and unskilled work. Plaintiff can work better with things rather than with people in terms of instructions only. Plaintiff's ability to make decisions within a simple routine is best in the context of things, but work with other people is not excluded by this limitation. Additionally, Plaintiff is limited to work which allows him to be off-task for one to two percent of the workday with no reduction in activity. (TR 15-27).

The ALJ concluded that because Plaintiff was not capable of performing his past relevant work as a construction manager/inspector, but had acquired work skills from his past relevant work that were transferrable to other occupations with jobs existing in significant numbers in the economy, Plaintiff was not under a disability as defined in the Social Security Act. (TR 27-29).

## VI. LAW AND ANALYSIS

### A. Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's

decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

**B. Framework for Social Security Disability Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. he was not engaged in substantial gainful employment; and
2. he suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. he did not have the residual functional capacity to perform his past relevant work.

20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented him from doing his past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. 20 C.F.R. § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial

evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments. *Id.* (citations omitted).

**C. Analysis**

Plaintiff argues that the ALJ failed to properly assess his complaints of pain, limitations, and credibility, failed to attribute proper weight to the opinions of treating sources, failed to pose complete and accurate hypothetical questions to the VE, and erred in formulating Plaintiff's RFC to include light work.

First, with respect to Plaintiff's limiting claims of pain, the ALJ found that Plaintiff's statements and testimony were not entirely credible. It is well established that an ALJ's credibility determinations should be accorded deference and should not be easily discarded since the ALJ has been afforded the unique opportunity to observe the demeanor of the claimant. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993) (citation omitted). A finding that a claimant is not credible must be supported by substantial evidence in the same manner as any other ultimate factual determination.

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.
>
> . . . The reasons for the credibility finding must be grounded in the evidence and

articulated in the determination or decision.

Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34483, 34485-86 (1996). The assessment must be based on a consideration of all of the evidence in the case record, including

> Statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. at 34486.

On the other hand, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2). In addition to the available objective medical evidence, the ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 404.1529(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Here, the ALJ thoroughly reviewed the medical evidence and concluded that it did not fully corroborate the level of intensity or frequency of Plaintiff's allegations of ongoing symptoms and pain caused by his severe impairments. Among other things, the ALJ considered the medical report of Plaintiff's neurosurgeon, Dr. Ho, that indicated that Plaintiff could return to work full time

without restrictions following his lumbar laminectomy. (TR 16). The ALJ also considered Dr. Ho's assessment that Plaintiff should be disabled from his current job but not be permanently disabled from all jobs, along with Dr. Ho's report showing that Plaintiff had decreased sensation in the lower extremities and left quadriceps atrophy, but an overall improvement in left quadriceps weakness, with normal reflexes, balance, gait, and station. (TR 16). The ALJ discussed Dr. Ho's opinion that Plaintiff should be restricted from repetitive bending, lifting, twisting, pushing, and pulling, and that he was unable to sit, stand, or walk for more than thirty minutes at a time. (TR 16-17). He also noted Dr. Culik's assessment that Plaintiff exhibited left leg weakness or numbness, but had clear lungs and a normal cardiac examination. (TR 17).

After the ALJ reviewed in minute detail the evidence pertaining to Plaintiff's physical impairments, he considered the evidence relating to Plaintiff's mental impairments. (TR 20). The ALJ discussed Dr. Williams' assessments showing that Plaintiff achieved IQ scores showing average intelligence, was oriented to person, place, and time, demonstrated no confusion, and normal motor function. The ALJ noted that although Dr. Williams documented that Plaintiff had memory deficits related to verbally mediated types of information, there were no documented abnormalities with perceptual skills, motor skills, language skills, conceptualization, reasoning abilities, attention, and academic functioning. (TR 20).

Additionally, the ALJ considered other factors in assessing Plaintiff's credibility, such as statements regarding activities of daily living; the type, dosage, effectiveness, and side effects of medications used to alleviate symptoms; and other forms of treatment used to alleviate Plaintiff's symptoms. (TR 23). The ALJ discussed the fact that he considered the Plaintiff's abnormal lower extremity symptoms and incorporated into the RFC a sit/stand option, the use of a cane for walking

distances greater than one block, and the limitations of no more than occasional balancing with the use of a cane, stooping, kneeling, crouching, and crawling, and the provision of resting after climbing ramps and fifteen steps at a time. (TR 21). The ALJ observed that the RFC restricted Plaintiff to light work and included the limitation that Plaintiff elevate his feet to stool height of six to eight inches and only occasionally operate foot/leg controls in response to Plaintiff's statements and objective evidence showing that his knees swelled and he needed to elevate his legs. The ALJ noted that the RFC limited Plaintiff to work in which he could avoid concentrated exposure to chemicals, fumes, unprotected heights, moving machinery, and vibration in response to evidence of abnormal respiratory findings and decreased lower extremity sensory function. Furthermore, the ALJ indicated that the RFC restricted Plaintiff to simple, repetitive work tasks of semiskilled and unskilled work in response to evidence that Plaintiff exhibited mild to moderate mental deficiencies and that pain could adversely impact Plaintiff's ability to sustain concentration. (TR 22).

The ALJ opined that the physical findings, along with the mild to moderate mental findings, lack of intensive inpatient admissions for intensive psychiatric care, and the conservative treatment for Plaintiff's mental deficiencies supported the conclusion that Plaintiff's allegations of disability were not fully credible. The undersigned finds that the ALJ's credibility finding is supported by substantial evidence and should be accorded deference.

Next, Plaintiff argues that the ALJ improperly discounted the opinions of treating physicians Dr. Harbut, Dr. Chiodo, and Dr. Rubenfaer, particularly with regard to their conclusions that Plaintiff was disabled and unable to work. It is well-settled that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it

is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). In contrast, it is equally as well-established that the ultimate issue of disability is reserved to the Commissioner, and not the treating physician. *Kidd v. Comm'r*, 283 Fed. Appx. 336, 343 (6th Cir. 2008). "Thus, when a treating physician offers an opinion on an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not afford that opinion controlling weight." *McAley v. Comm'r*, No. 08-14504, 2010 WL 1064133, at *2 (E.D. Mich. Feb. 10, 2010) (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)).

Here, the ALJ considered the entire case record, discussed in detail the medical opinions of Plaintiff's treating and non-treating physicians, and crafted an RFC that took into consideration assessments made by Plaintiff's physicians to the extent they were consistent with the evidence of record. Although the ALJ rejected Dr. Rubenfaer's opinion, he did so only after explicitly stating that Dr. Rubenfaer's "check-the-box" assessment was not supported by the overall medical evidence. Indeed, the ALJ cited specific examples in the record with which Dr. Rubenfaer's opinion differed. As required by agency regulations, the ALJ gave good reasons for rejecting the medical "check-the-box" opinion of Dr. Rubenfaer. *See Nelson v. Comm'r*, 195 Fed. Appx. 462, 469 (6th Cir. 2006). Moreover, the ALJ indicated that he partially rejected the May 6, 2010 medical opinion of Dr. Harbut, the July 2009 opinion of Dr. Culik, and the March and July 2008 opinions of Dr. Chiodo to the extent those opinions concluded that Plaintiff was permanently disabled and could not work in any capacity. The ALJ was not bound to accept treating physician opinions pertaining to the ultimate issue of disability. The ALJ provided good reasons for rejecting or partially rejecting the opinions of Drs. Rubenfaer, Harbut, Culik, and Chiodo.

Plaintiff next argues that the ALJ's RFC for light work is not supported by substantial

evidence. In particular, Plaintiff argues that the ALJ's finding that Plaintiff has moderate deficiencies in concentration are not consistent with the RFC permitting Plaintiff to be off-task only one to two percent of the workday. Plaintiff further argues that the RFC requirement of a sit/stand option and the use of a cane for walking farther than one block is inconsistent with the definition of light work activity.

The ALJ found that Plaintiff could perform a limited range of light work as defined in 20 CFR § 404.1567(b), which by definition requires a claimant to lift and carry up to twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. The ALJ also included in the RFC the use of a cane for occasional balancing and assistance in ambulating greater than one block.

The use of a cane to ambulate has been found to preclude light work in those instances in which a claimant's ability to lift or carry twenty pounds is adversely impacted by the cane use. *Jones v. Comm'r*, No. 10-840, 2012 WL 967509, at *5 (W.D. Mich. Feb. 8, 2012). *See also Love v. Comm'r*, 605 F.Supp.2d 893, 907 (W.D. Mich. 2009). The ALJ addressed Plaintiff's left leg weakness and numbness, his claims that his left leg and knee swell, evidence that Plaintiff becomes off balance, evidence that Plaintiff uses a cane to assist with balance and ambulation, and evidence showing pain radiating down Plaintiff's left leg, but did not specifically address whether Plaintiff's requirement for cane use to assist with balance and ambulation would impair or impede Plaintiff's ability to lift and carry up to twenty pounds at a time. Plaintiff testified that he can carry up to a gallon of milk, which the ALJ estimated to weigh eight pounds. He also testified that he becomes off balance and requires a cane for stability when he picks up objects with both hands or reaches with both arms, skills he may likely have to master if he is required to lift and carry objects weighing

up to twenty pounds. (TR 53, 55). It is not the duty of this Court to weigh the evidence and make factual determinations. The undersigned concludes that this case should be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for a determination of whether Plaintiff's use of a cane for ambulation and balance interfere with his ability to lift and carry up to twenty pounds at a time, and if so whether that precludes an RFC of light work.

Next, the ALJ found that Plaintiff has moderate concentration deficits yet fashioned an RFC that permits Plaintiff to be off-task at his station only one to two percent of the time with no reduction in activity. Courts have found "[i]t is difficult to reasonably accept 'moderate' [concentration deficits] meaning anything less than [drifting off-task] 20%-30% of the time at work." *Green v. Comm'r*, No. 08-11398, 2009 WL 2365557, at *10 (E.D. Mich July 28, 2009). Therefore, the undersigned suggests that the ALJ's RFC limitation that Plaintiff be allowed to drift off-task for one to two percent of the time with no reduction in activity is not supported by substantial evidence. Accordingly, the undersigned recommends that this matter be reversed and remanded to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should determine whether Plaintiff's use of a cane for ambulation and balance interfere with his ability to lift and carry up to twenty pounds at a time, and if so whether that precludes an RFC of light work. The ALJ should also consider whether Plaintiff's moderate concentration deficits dictate an RFC permitting Plaintiff to drift off-task roughly 20-30% of the time, as opposed to one to two percent of the time. If the ALJ modifies the RFC he should obtain VE testimony to verify whether there exists a significant number of jobs in the economy Plaintiff could perform with his limitations.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: July 9, 2012

s/ Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: July 9, 2012

s/ Lisa C. Bartlett
Case Manager